**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DANIEL LANZARIN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE TOPPS COMPANY, INC.,

Defendant.

Case No. 3:26-cv-00063-RS

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION**

Date: June 4, 2026
Time: 1:30 p.m. PT
Judge: Hon. Richard Seeborg
Courtroom: 3, 17th Floor

## TABLE OF CONTENTS

PAGE(S)


INTRODUCTION ........ 1

LEGAL STANDARD ........ 1

ARGUMENT ........ 2

I. THE THRESHOLD QUESTION IS WHETHER A VALID AGREEMENT EXISTS ........ 2

A. California Law Governs Whether Plaintiff Purportedly Accepted The Agreement ........ 3

B. Defendant's Choice Of Law Clauses Are Independently Void Under Cal. Civ. Code Section 1799.208 ........ 5

II. NO VALID AGREEMENT WAS FORMED BETWEEN PLAINTIFF AND DEFENDANT ........ 6

A. Defendant Failed To Provide Reasonably Conspicuous Notice ........ 7

B. Plaintiff Did Not Unambiguously Manifest Assent To The Terms ........ 13

C. Repeated Logins Do Not Cure Formation Defects ........ 15

CONCLUSION ........ 15

# TABLE OF AUTHORITIES


**PAGE(S)**

**CASES**

*AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643 (1986) .......... 1, 3

*Berlinger v. Viagogo Ent., Inc.*, 2026 WL 203538 (S.D.N.Y. Jan. 27, 2026) .......... 5

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .......... passim

*Carruth v. KD Creatives, Inc.*, 2025 WL 2623291 (E.D. Cal. Sept. 11, 2025) .......... 11, 13

*Cavanaugh v. Fanatics, LLC* 738 F. Supp. 3d 1285 (E.D. Cal 2024) .......... 10, 13, 15

*Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025) .......... passim

*Coinbase, Inc. v. Suski*, 144 S. Ct. 1186 (2024) .......... 2

*Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017) .......... 15

*Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943 (2025) .......... 7, 11

*Dilanyan v. Hugo Boss Fashions, Inc.*, 2025 WL 3549869 (C.D. Cal. Dec. 3, 2025) .......... 11

*Dougherty v. Zynga Inc.*, 2026 WL 880150 (N.D. Cal. Mar. 31, 2026) .......... 5

*Edmundson v. Klarna, Inc.*, 85 F.4th 695 (2d Cir. 2023) .......... 7

*Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240 (N.D. Cal. 2019) .......... 4

*Ferrell v. SnapCommerce Holdings, Inc.*, 2025 WL 3280992 (N.D. Cal. Nov. 25, 2025) .......... 11

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ........ 1

*Godun v. JustAnswer LLC*,
135 F.4th (9th Cir. 2025) ........ 12

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ........ 4, 13, 14

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) ........ 6

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) ........ 2

*Judge v. Academia, Inc.*,
2026 WL 1256876 (N.D. Cal. May 7, 2026) ........ 12

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ........ 7

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ........ 15

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........ 3

*Kroskey v. Elevate Labs, LLC*,
2025 WL 1507091 (N.D. Cal. May 27, 2025) ........ 14

*Lopez v. Dave Inc.*,
2022 WL 17089824 (N.D. Cal. Nov. 21, 2022) ........ 11

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........ 5, 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........ 6

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ........ 2, 3

*Moyer v. Chegg, Inc.*,
2023 WL 4771181 (N.D. Cal. July 25, 2023) ........ 1

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 3, 4, 8, 15

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 14

*Pitzer Coll. v. Indian Harbor Ins. Co.*,
8 Cal. 5th 93, 447 P.3d 669 (2019) .......... 4

*R.C. v. Walmart Inc.*,
2025 WL 2836648 (C.D. Cal. Sept. 30, 2025) .......... 11

*Rocha v. Urb. Outfitters, Inc.*,
2024 WL 393486 n.1 (N.D. Cal. Feb. 1, 2024) .......... 2

*Rushing v. Williams-Sonoma, Inc.*,
2025 WL 2391394 (N.D. Cal. Aug. 18, 2025) .......... 12

*S.G. v. Epic Games, Inc.*,
796 F. Supp. 3d 614 (N.D. Cal. 2025) .......... 3

*Sanford v. MemberWorks, Inc.*,
483 F.3d 956 (9th Cir. 2007) .......... 15

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012) .......... 5

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) .......... 2, 11, 15

*Soltero v. Precise Distribution, Inc.*,
102 Cal. App. 5th 887 (2024) .......... 2

*Tabas v. MoviePass, Inc.*,
401 F. Supp. 3d 928 (N.D. Cal. 2019) .......... 15

*Tejon v. Zeus Networks, LLC*,
2026 WL 1194722 (11th Cir. May 1, 2026) .......... 4, 11

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136 (9th Cir. 1991) .......... 15

*Trans-Tec Asia v. M/V Harmony Container*,
518 F.3d 1120 (9th Cir. 2008) .......... 4

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
363 U.S. 574 (1960) .......... 3

*Victoria v. Superior Ct.*,
40 Cal. 3d 734, 222 Cal. Rptr. 1, 710 P.2d 833 (1985) .......... 2

**STATUTES**

9 U.S.C. § 4 .......... 1

Cal. Civ. Code § 1799.208 .......... 5, 6

Cal. Civ. Code § 1799.208(a) ........ 5
Cal. Civ. Code § 1799.208(b) ........ 5
Cal. Civ. Code § 1799.208(e) ........ 5
Cal. Const. Art. 1, § 1 ........ 4
Cal. Pen. Code § 502 ........ 5
Cal. Pen. Code § 502(a) ........ 4
Cal. Pen. Code § 630 ........ 4

**RULES**

Fed. R. Civ. P. 56 ........ 6

## INTRODUCTION

Defendant The Topps Company, Inc. ("Defendant" or "Topps"), is a retailer of "trading cards and collectibles, custom cards, memorabilia, sticker album collections and more." Complaint (ECF No. 1) ("Compl.") ¶ 2. Defendant also represents to its customers that data collection on its website www.topps.com (the "Website"), will be done anonymously. Compl. ¶¶ 14–20. Unbeknownst to its customers, and contrary to its promise its marketing trackers "don't store personal info[,]" Defendant shares specific details of its customers' identities and purchases with undisclosed third parties, Meta Platforms, Inc. ("Meta") and Amplitude, Inc. ("Amplitude") without consent. *Id.* at Fig. 1, ¶¶ 3–4, 6–8, 14–20. Plaintiff Daniel Lanzarin ("Plaintiff") brings claims against Defendant for violations of federal and state law, namely the Electronic Communications Privacy Act (the "ECPA"), the California Invasion of Privacy Act ("CIPA") §§ 631–32, the Comprehensive Computer Data Access and Fraud Act ("CDAFA") § 502, and invasion of privacy under the California Constitution. *See generally* Compl. ¶¶ 132–207.

Rather than dispute the merits of Plaintiff's well-pleaded Complaint, Defendant seeks to force Plaintiff into arbitration based on "Terms of Service" that Plaintiff purportedly accepted as a part of the checkout process (he did not). *See generally* Defendant's Motion to Compel Arbitration (ECF No. 25) ("Motion" or "Mot."). Whether a valid agreement exists is a threshold question reserved for courts, not arbitrators. Under this Circuit's precedent on internet contract law, no arbitration agreement exists between Plaintiff and Defendant. Accordingly, this Court should deny Defendant's motion in its entirety.

## LEGAL STANDARD

The Federal Arbitration Act (the "FAA") provides that a court may only compel arbitration "upon being satisfied that the making of the agreement . . . is not at issue." 9 U.S.C. § 4. However, a party who "contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate." *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 921–22 (N.D. Cal. 2024) (quoting *Moyer v. Chegg, Inc.*, 2023 WL 4771181, *3 (N.D. Cal. July 25, 2023)); *see also AT&T Techs., Inc. v. Communications*

*Workers of Am.*, 475 U.S. 643, 648 (1986) ("arbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit").

Before referring a dispute to an arbitrator, "the court determines whether a valid arbitration agreement exists" and "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1193 (2024) (alterations in original) (citation omitted). The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). "When evaluating a motion to compel arbitration, courts apply a standard similar to a motion for summary judgment, construing all facts and reasonable inferences in a light most favorable to the non-moving party." *Rocha v. Urb. Outfitters, Inc.*, 2024 WL 393486, at *1 n.1 (N.D. Cal. Feb. 1, 2024) (collecting cases). "While California public policy favors arbitration, there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate.'" *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021) (quoting *Victoria v. Superior Ct.*, 40 Cal. 3d 734, 744, 222 Cal. Rptr. 1, 710 P.2d 833 (1985)). "[T]he basic rule is that one must be a party to an arbitration agreement to be bound by it or invoke it . . . ." *Soltero v. Precise Distribution, Inc.*, 102 Cal. App. 5th 887, 322 (2024).

## ARGUMENT

### I. THE THRESHOLD QUESTION IS WHETHER A VALID AGREEMENT EXISTS

Defendant posits that although "[c]ourts use state-law principles to determine if a valid agreement to arbitrate exists[,]" courts must also give "due regard to the federal policy favoring arbitration." Mot. at 8 (cleaned up). Not so.

Defendant's position is undermined by the Supreme Court's holding in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). In an unanimous opinion, the Court explained "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules . . . . Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over

litigation." 596 U.S. 411, 418 (2022) (cleaned up) (internal citations omitted). Put simply, federal policy merely requires evaluating arbitration agreements like any other contract.

Thus, the threshold question before this Court is whether a valid agreement exists. *S.G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 619 (N.D. Cal. 2025) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit") (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co*., 363 U.S. 574, 582 (1960))); *see also Kramer v. Toyota Motor Corp*., 705 F.3d 1122, 1126 (9th Cir. 2013) (The "public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement"). As Defendant rightfully acknowledges, the same holds true for choice of law provisions. Mot. at 9, n. 2; *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("whether the choice of law provision applies depends on whether the parties agreed to be bound by Barnes & Noble's Terms of Use in the first place.").

### A. CALIFORNIA LAW GOVERNS WHETHER PLAINTIFF PURPORTEDLY ACCEPTED THE AGREEMENT[1]

Defendant, presuming the existence of an agreement argues "the Court should apply New York law." Mot. at 10. That is wrong, as Defendant's position presupposes the existence of a valid agreement.

As a preliminary matter, this Court should only conduct a choice-of-law analysis if it determines an enforceable agreement exists. *Nguyen*, 763 F.3d at 1175 ("whether the choice of law provision applies depends on whether the parties agreed to be bound by Barnes & Noble's Terms of Use in the first place."). As discussed *infra*-Section II, no agreement was formed between the Parties.

Assuming, *arguendo,* the terms are enforceable, California law should apply. Under Section 187 of the Restatement Second of Conflict of Laws when determining the enforceability of contractual choice of law provision, the court must first determine: (1) whether the chosen state has a substantial relationship with the parties or their transaction, or (2) whether there is any other

[1] Plaintiff maintains this Court should only reach the choice-of-law analysis if a valid agreement exists under California law.

reasonable basis for the parties' choice of law. *Pitzer Coll. v. Indian Harbor Ins. Co.*, 8 Cal. 5th 93, 100, 447 P.3d 669, 673 (2019). If either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California.

Here, if a valid agreement exists, California law applies to Plaintiff's claims because California has a greater interest in the dispute. Indeed, Plaintiff brings the majority of his claims under California law, on behalf of the California Subclass. Compl. ¶¶ 122 (California subclass), 152–207 (California claims). Further, it would violate California public policy to enforce the contract's choice of law clause to salvage what would otherwise be an unenforceable agreement under California law. *Nguyen*, 763 F.3d at 1175 ("whether the choice of law provision applies depends on whether the parties agreed to be bound by Barnes & Noble's Terms of Use in the first place."); *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1249 n.5 (N.D. Cal. 2019) ("The Court cannot apply the choice-of-law provision in the Deposit Agreement because that presupposes that a contract has been formed in the first place.") (citing *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008)).

Moreover, applying New York law would moot California's fundamental interest in protecting individual privacy. Cal. Const. Art. 1, § 1 (individual's inalienable rights include the right to privacy); Cal. Penal Code § 630 ("The Legislature by this chapter intends to protect the right of privacy of the people of this state"); Cal. Penal Code § 502(a) ("It is the intent of the Legislature in enacting this section to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems. The Legislature finds and declares that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data.").

Even if New York law were to apply to whether an agreement exists (it does not), internet contract principles are substantially the same irrespective of the forum. *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) ("we have consistently stated that no differences exist in the law of the different states as to internet contract formation.") (collecting cases); *Tejon v. Zeus Networks,*

*LLC*, 2026 WL 1194722 (11th Cir. May 1, 2026) (adopting *Berman*); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) ("New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'") (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012)); *Dougherty v. Zynga Inc.*, 2026 WL 880150, at *3 (N.D. Cal. Mar. 31, 2026) ("The Court need not choose between New York or California law at this step because there is no meaningful difference between the two on the issue of contract formation."); *Berlinger v. Viagogo Ent., Inc.*, 2026 WL 203538, at *4 (S.D.N.Y. Jan. 27, 2026) ("'the choice between California law and New York law [is not] dispositive with respect to the issue of whether an arbitration agreement was formed,' as both states apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term'"); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (same).

**B. DEFENDANT'S CHOICE OF LAW CLAUSES ARE INDEPENDENTLY VOID UNDER CAL. CIV. CODE SECTION 1799.208**

Under California law, "[a] seller shall not require a consumer to agree to a provision that would . . . [r]equire the consumer to arbitrate outside of California a claim arising in California" or "[r]equire the consumer to arbitrate a controversy arising in California under the substantive law of a state other than California." Cal. Civ. Code § 1799.208(a). Critically, "[a]ny provision of a contract that violates" this rule "is voidable by the consumer, and if a provision is rendered void at the request of the consumer, the matter shall be adjudicated in California and California law shall govern the dispute." Cal. Civ. Code § 1799.208(b). "This section applies to a contract entered into, modified, or extended on or after January 1, 2025." Cal. Civ. Code § 1799.208(e).

Here, Plaintiff—a California resident and citizen (Compl. ¶¶ 6–8)—brings a number of claims on behalf of the California subclass under exclusively California law, namely, CIPA §§ 631–32, CDAFA § 502, and the California Constitution. Compl. ¶¶ 132–207. Further, Plaintiff was in California when he had the tracking technologies installed on his browser. *Id.* at ¶¶ 6–8.

Yet the Terms to which Defendant argues Plaintiff purportedly agreed to would require Plaintiff to resolve his claims under New York law. Mot. at 9. For example, section 25 requires application of "with the laws of the State of New York" and section 18.7 requires "the law of the

State of New York shall exclusively apply." ECF No. 25-5 at 25, 33. Both provisions would require Plaintiff to adjudicate his claims outside of California, with a different state's laws. Accordingly, under Cal. Civ. Code § 1799.208, Defendant's choice-of-law provisions are void.

## II. NO VALID AGREEMENT WAS FORMED BETWEEN PLAINTIFF AND DEFENDANT[2]

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Defendant, as "[t]he party seeking to compel arbitration[,] bears the burden of proving the existence of an agreement to arbitrate." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1153 (9th Cir. 2025). In making this determination, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (same). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022).

"In the world of internet contracts, there are browsewrap, clickwrap, scrollwrap, and sign-in wrap agreements, each of which purport to bind users through different 'assent' mechanisms." *Chabolla*, 129 F.4th at 1154. In the case of clickwrap and scrollwrap, those terms are "routinely enforced" because they both require a user to "click[] or check[] a box stating she agrees." *Id.* By forcing users to affirmatively click a box before being able to proceed further, it cannot be disputed whether the user agreed or not. Contrastingly, in a browsewrap—which courts consistently decline to enforce—the "user accepts a website's terms of use merely by browsing the site, although those terms are not always immediately apparent on the screen." *Id.* For sign-in wraps, "the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Id.* Sign-in wraps, like the one at issue here, "practically

[2] Defendant argues "[t]he Delegation Clause in the Arbitration Agreement bars any attempt by Plaintiff to seek judicial resolution of any challenge he may seek to raise concerning arbitrability." Mot. at 20–22. However, the Court need not reach this issue because no valid agreement exists.

invite litigation over the enforceability of their sites' terms and conditions[.]" *Berman*, 30 F.4th at 868 n. 4.

Nowhere does Defendant indicate Plaintiff had actual notice. *See generally* Motion; *Berman*, 30 F.4th at 856 ("Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory"). Consequently, the Court should apply the test for inquiry notice. *Berman*, 30 F.4th at 856 ("an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."); *Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 954 (2025) ("it is the degree of notice provided, not the label, that is determinative"). This is true irrespective of whether the Court applies New York or California law. *See e.g. Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) (upholding the two-part test of (1) whether there is inquiry, i.e., reasonably conspicuous notice and (2) whether a user unambiguously manifested assent); *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (same),

**A. DEFENDANT FAILED TO PROVIDE REASONABLY CONSPICUOUS NOTICE**

The Ninth Circuit has repeatedly held that for notice of the terms to be conspicuous, it "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Chabolla*, 129 F.4th at 1155 (quoting *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (quoting *Berman*, 30 F.4th at 856)). This requires a "traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design[.]" *Id.* (citations omitted).

Defendant indicates its login screen "clearly put a reasonably prudent user on notice of those Terms" in part because below the ***Log In*** button there is text saying "[b]y continuing, you agree to the Topps Terms and Privacy Policy." However, Defendant did nothing more than underline the terms. This is hardly persuasive, and certainly not dispositive, as "the proximity or conspicuousness of the hyperlink alone is not enough to give rise to constructive notice[.]" *Nguyen*, 763 F.3d at 1178.

Further, "the fact that a hyperlink is present must be readily apparent" and "[s]imply underscoring words or phrases . . . will often be insufficient to alert a reasonably prudent user that a clickable link exists." *Id.*

A side-by-side comparison to with the sign-in wraps the Ninth Circuit has rejected makes clear Defendant's purported notice falls short. Here, the following pages are at issue:



|  |  |
|---|---|
| Log-In Page 1 (ECF 25-4 at p. 3 of 4) | Log-In Page 2 (ECF 25-4 at p. 4 of 4) |





In *Chabolla*, the following two screens were at issue:

*See Chabolla v. ClassPass Inc.*, Case No. 23-15999, Dkt. 11 at 20–22.






In *Berman*, the screens at issue were the following:







*Berman*, 30 F.4th at 849.

These notices are arguably more conspicuous than the notices at issue here, yet the Ninth Circuit still found them to be deficient. *See Chabolla*, 129 F.4th at 1157 ("Because of the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color, we find that it is 'deemphasized by the overall design of the webpage' and not 'prominently displayed[.]'"); *Berman*, 30 F.4th at 857 ("The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text.").

Defendant's login screen is substantially similar the login page the Eastern District of California readily rejected in *Cavanaugh v. Fanatics, LLC*, declining to "depart from the overall trend that finds hyperlinks must be offset in a more obvious way than the underlining used on the Fanatics sign-up page at issue in this case." 738 F. Supp. 3d 1285, 1296 (E.D. Cal 2024).[3]

[3] Fanatics, LLC is in the same corporate family as Defendant. *See* ECF No. 13 (corporate disclosure statement).

The same holds true here, Defendant's login screen does nothing more than underline the terms, which a number of courts have found insufficient to provide reasonably conspicuous notice on its own. *Ferrell v. SnapCommerce Holdings, Inc.*, No. 2025 WL 3280992, at *3 (N.D. Cal. Nov. 25, 2025) ("[The defendant], simply put, did not 'do more than simply underscore the hyperlinked text.'"); *R.C. v. Walmart Inc.*, 2025 WL 2836648, at *3 (C.D. Cal. Sept. 30, 2025) ("A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently 'set apart' from the surrounding text."); *Tejon v. Zeus Networks, LLC*, 2026 WL 1194722, at *3 (11th Cir. May 1, 2026) (in denying a motion to compel the court explained "[a]lthough 'Terms of Service' is underlined, indicating the presence of a hyperlink, it is otherwise indistinguishable from the informational text of the same size and color surrounding it."); *Carruth v. KD Creatives, Inc.*, 2025 WL 2623291, at *7 (E.D. Cal. Sept. 11, 2025) ("In none of those cases has the [Ninth Circuit] held or suggested that underlining and proximity to an action button, without more, satisfy the visual aspects of the website analysis for sign-in wrap agreements."); *Dilanyan v. Hugo Boss Fashions, Inc.*, 2025 WL 3549869, at *3 (C.D. Cal. Dec. 3, 2025) (same); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 481, 289 Cal. Rptr. 3d 1, 29 (2021) ("the hyperlink to the terms of service is underlined, but it is not set apart in any other way that may draw the attention of the consumer, such as with blue text or capital letters"). This is fatal to Defendant's position.

The problem with Defendant's design is further exacerbated because the natural user flow ends with when a user clicks the "Log In" button and Defendant placed the advisal below the button such that it falls outside of the user flow. *Lopez v. Dave Inc.*, 2022 WL 17089824, at *1 (N.D. Cal. Nov. 21, 2022) ("problem is exacerbated because the 'comparatively larger font' of the 'Join' button"); *Carruth*, 2025 WL 2623291, at *7 ("In none of those cases has the [Ninth Circuit] held or suggested that underlining and proximity to an action button, without more, satisfy the visual aspects of the website analysis for sign-in wrap agreements."); *Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 958, 335 Cal. Rptr. 3d 906, 918 (2025) ("[O]ther aspects of the notice text and the action button deemphasize the conspicuousness of the notice text. Specifically, the notice text on the delivery order

checkout page is only approximately half the size of the action button's white text; on both checkout pages, the white text of the action button is far easier to see . . . .").

*Rushing v. Williams-Sonoma, Inc.* is instructive. There the court explained "the design of the disclosure [was] insufficient to show visual conspicuousness" because "[t]he disclaimer [was] in small font (much smaller than Shopping Cart above and the highly contrasted CHECKOUT and EXPRESS CHECKOUT action buttons below), [was] the same color as surrounding text, the terms and conditions are not capitalized, and while underlined, the hyperlink represented by the underlining is not in blue or otherwise color contrasted." *Rushing v. Williams-Sonoma, Inc.*, 2025 WL 2391394, at *8 (N.D. Cal. Aug. 18, 2025). Here, (1) the advisal is in a font smaller than the FanaticsOne graphic and the "Enter your password" text which draw the user's attention to the top of the screen, (2) the "Log In" button is designed to be high contrast (light text on a black background), (3) the advisal is not bolded like the "Reset password" and "Not you?" links, both of which are above the "Log In" Button; and (4) advisal is not set apart in any meaningful fashion (e.g. full capitalization, high contrast coloring, etc.). This Court should find that, taken together, "the design of the disclosure is insufficient to show visual conspicuousness." *Rushing*, 2025 WL 2391394, at *8.

The checkout flow being separate also cuts against Defendant's position. The purportedly binding terms only appear on one of the two pages of the log in process. Moreover, by Defendant's own description, the sign-in process is entirely independent from the checkout process, such that a reasonably prudent internet user may not connect signing into an account with their purchase. *Compare* ECF No. 25-2 Craig Decl. ¶¶ 4–21; *with Judge v. Academia, Inc.,* 2026 WL 1256876, at *3 (N.D. Cal. May 7, 2026) ("Academia provided no evidence that Judge's clicking of the nearby links was 'temporally coupled' with his use of the Find Your Friends feature.") (citing *Godun v. JustAnswer LLC,* 135 F.4th 69, 714 n.7 (9th Cir. 2025)); *see also* Compl. ¶¶ 6–8, 93–111.

Further, the Topps "Log In" button contains a particular feature that draws attention away from the advisal and toward the action button: the prominent dark "Log In" button itself, transitions from gray to black once a password is entered. Craig Decl. ¶ 14, 19. The button is the largest, most colorful, and most attention-getting element on the screen. By design, the user's eye is drawn to the

button, and when it changes color, the user is enticed to click it. The advisal below the button—smaller, undifferentiated, and outside the user's line of action—cannot compete. *See Berman*, 30 F.4th 849, 857 (9th Cir. 2022) ("the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text. Far from meeting the requirement that a webpage must take steps 'to capture the user's attention and secure her assent,' the design and content of these webpages draw the user's attention away from the most important part of the page.").

Defendant attempts to bolster its position by citing to the concurrence in *Godun.* Mot. at 17. However, the concurrence is not binding law, and Defendant cannot use it to upend the well-settled standards first set out in *Berman*. *Id.* Indeed, the majority opinion—which ***is*** binding, upheld *Berman*. *Godun v. JustAnswer LLC*, 135 F.4th at 708–11. *Berman* remains controlling law, and a majority of courts recognize underlining, without more, is insufficient to put a user on notice of terms. *See e.g. Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1296 (E.D. Cal. 2024) ("In the absence of any evidence demonstrating that website design practices and public understanding of them have shifted, the Court will not depart from the overall trend that finds hyperlinks must be offset in a more obvious way than the underlining used on the Fanatics sign-up page at issue in this case."); *Carruth*, 2025 WL 2623291, at *7 ("In none of those cases has the [Ninth Circuit] held or suggested that underlining and proximity to an action button, without more, satisfy the visual aspects of the website analysis for sign-in wrap agreements.").

Because underlining the Terms is insufficient, on its own, to be conspicuous, no agreement exists.

### B. PLAINTIFF DID NOT UNAMBIGUOUSLY MANIFEST ASSENT TO THE TERMS

Defendant argues "the Court should hold Lanzarin to the terms of the Agreement and compel arbitration of his claims" because he "unambiguously manifested assent to the Topps Terms." Mot. at 20. That is wrong.

"A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and

conditions of an agreement." *Berman*, 30 F.4th at 857 (emphasis added). "[U]nambiguous manifestation of assent can only occur in the inquiry-notice context where an internet user is 'explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement.'" *Godun v. JustAnswer LLC*, 135 F.4th 699, 710 (9th Cir. 2025). Critically "[e]ven strongly implicit advisement isn't enough—a webpage must explain that certain actions will be understood by the offeror to signal assent to contractual terms. *Id.* at 711.

*Chabolla v. ClassPass Inc.*, is instructive. There, the Ninth Circuit found "the notice language . . . ambiguous" where the advisal read that "[b]y signing up you agree to our Terms of Use and Privacy Policy" because "there is no 'sign up' button, and the only button . . . reads 'Continue.'" *Chabolla*, 129 F.4th at 1158. Likewise, the notice language in the present action reads "[b]y continuing, you agree to the Topps Terms and Privacy Policy" but there is no continue button, instead there is only a button that reads "Log In." This is precisely the type of deficient advisal the Ninth Circuit held to be too ambiguous to bind users. *Chabolla*, 129 F.4th at 1158–59. In *Godun*, the Ninth Circuit affirmed *Chabolla*, holding "the text on an action button matters insofar as it matches an advisal's explanation." *Godun v. JustAnswer LLC*, 135 F.4th at 713.

Here, as in *Chabolla*, the button-text mismatch is dispositive. The sole action button on Defendant's screen reads "Log In[,]" a label signaling authentication not contractual acceptance. Defendant could have easily cured this deficiency by ensuring the button text matched the call to action but failed to do so. This is fatal to Defendant's argument. Defendant's case law does not compel a different result as ***none*** of those cases contemplate the Ninth Circuit's opinions in *Godun* and *Chabolla* which are binding on this Court. *Compare Godun*, 135 F.4th at 712–714, *and Chabolla*, 129 F.4th at 1158–60; *with Kroskey v. Elevate Labs, LLC*, 2025 WL 1507091 (N.D. Cal. May 27, 2025), *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023). Because *Godun* and *Chabolla* refine the existing framework they control.

Because Defendant cannot prove Plaintiff unambiguously manifested assent, no agreement was formed between Plaintiff and Defendant.

**C. REPEATED LOGINS DO NOT CURE FORMATION DEFECTS**

Defendant argues Plaintiff "repeatedly assented to the Topps Terms, including the Arbitration Agreement." Mot. at 20; *see also* Mot. at 2–4. That is wrong.

Repeated exposure to an inadequate disclosure does not turn an inadequate disclosure into an adequate one. If a single click on "Log In" does not unambiguously manifest assent because the screen fails to provide conspicuous notice and the click is ambiguous, then multiple clicks on the same screen do not manifest assent for exactly the same reasons as discussed *supra*-Section II. *Chabolla*, 129 F.4th at 1156–57 (finding the context of the transaction was neutral even where there was some indication of a continuing relationship); *see also Cavanaugh*, 738 F. Supp. 3d 1285, 1295 (declining to consider the Plaintiff "also assented each subsequent time he logged into the website" when analyzing the conspicuousness of notice); *cf. Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (rejecting the defendant's argument that continued use constituted assent to an arbitration provision).

**CONCLUSION**

Based on these facts, the Court's duty to apply a standard similar to summary judgment, and the Court's responsibility to give Plaintiff "the benefit of all reasonable doubts and inferences that may arise," the Court should find that an agreement to arbitrate does not exist. *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 936 (N.D. Cal. 2019) (quoting *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007)); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (finding that, for an arbitration dispute regarding contract formation, "[t]he party opposing arbitration shall receive the benefits of all reasonable doubts and inferences."); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("Only when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.")). Indeed, because "online providers have complete control over the design of their websites," *Sellers*, 73 Cal. App. 5th 444, "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Nguyen*, 763 F.3d at 1179.

Because Defendant, as "designer of the webpages at issue here[,] did not take that obligation to heart," the Court must find Plaintiff did not have notice of the terms, nor did he unambiguously assent to the terms. *Berman*, 30 F.4th at 857. For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's motion to compel in its entirety.

Dated: May 14, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*