COOLEY LLP
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
ELIAS GARCIA (352669)
(elias.garcia@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

ROBBY L.R. SALDAÑA (356226)
(rsaldana@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, D.C. 20004-2400
Telephone: +1 202 842 7800
Facsimile: +1 202 842 7899

Attorneys for Defendant
THE TOPPS COMPANY, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DANIEL LANZARIN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE TOPPS COMPANY, INC.,

Defendant.

Case No. 3:26-cv-00063-RS

**THE TOPPS COMPANY, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY CASE**

Hearing Date: June 4, 2026
Time: 1:30 p.m.
Judge: Hon. Richard Seeborg
Date Action Filed: January 5, 2026

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Plaintiff Fails to Refute That the Arbitration Agreement Is Binding........ 2

1. Plaintiff Does Not Refute Topps' Showing That the Topps Login Flow Provides Reasonably Conspicuous Notice of the Topps Terms........ 2

a. Plaintiff's Misleading Arguments Cannot Refute the Visually Conspicuous Notice of the Topps Terms on the Login Webpages........ 2

b. Plaintiff Wholly Ignores the Transactional Context. ........ 10

2. Plaintiff Fails to Overcome Topps' Showing That He Unambiguously Manifested Assent to the Topps Terms. ........ 11

B. Plaintiff's Voidness Challenge to the New York Choice-of-Law Provisions Is Not Properly Raised Here And Otherwise Lacks Merit........ 13

1. The Delegation Clause (Which Plaintiff Does Not Challenge) Reserves This Issue for the Arbitrator. ........ 14

2. Plaintiff Provides No Evidence that He Ever Requested to Void the Provisions, Nor Are They Voidable........ 14

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases**


*Armenta v. Go-Staff, Inc.*,
No. 16-CV-2548 JLS (AGS), 2017 WL 1711293 (S.D. Cal. May 3, 2017) .......... 14

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... *passim*

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .......... 14

*Carruth v. KD Creatives, Inc.*,
No. 2:24-cv-02484-DAD-SCR, 2025 WL 2623291 (E.D. Cal. Sept. 11, 2025) .......... 10

*Cavanaugh v. Fanatics, LLC*,
738 F. Supp. 3d 1285 (E.D. Cal. 2024) .......... 8, 9, 13

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... *passim*

*Chabolla v. ClassPass Inc.*,
No. 23-15999, Dkt. 11 (9th Cir.) .......... 4

*Crowell v. Audible Inc.*,
806 F. Supp. 3d 1216 (W.D. Wash. 2025) .......... 12

*Cruz v. Tapestry, Inc.*,
113 Cal. App. 5th 943 (2025) .......... 7

*Dilanyan v. Hugo Boss Fashions, Inc.*,
No. 2:25-cv-05093-JLS-BFM, 2025 WL 3549869 (C.D. Cal. Dec. 3, 2025) .......... 10

*Ferrell v. SnapCommerce Holdings, Inc.*,
No. 25-cv-03160-JST, 2025 WL 3280992 (N.D. Cal. Nov. 25, 2025) .......... 10

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .......... *passim*

*Judge v. Academia, Inc.*,
No. 25-cv-05857-AMO, 2026 WL 1256876 (N.D. Cal. May 7, 2026) .......... 10

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .......... 13

*Lopez v. Dave Inc.*,
No. 22-cv-04160-VC, 2022 WL 17089824 (N.D. Cal. Nov. 21, 2022) .......... 7

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) .......... 2

*Naler v. Schneider Nat'l Carriers, Inc.*,
No. SACV 21-01019-CJC(DFMx), 2021 WL 8269177 (C.D. Cal. Nov. 5, 2021) ..... 15

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ..... 3, 12

*R.C. v. Walmart Inc.*,
No. 5:24-cv-02003-SRM-DTB, 2025 WL 2836648 (C.D. Cal. Sept. 30, 2025) ..... 10

*Romero v. Watkins & Shepard Trucking, Inc.*,
No. EDCV 19-2158 PSG (KKx), 2020 WL 5775180 (C.D. Cal. July 10, 2020) ..... 15

*Rushing v. Williams-Sonoma, Inc.*,
No. 16-cv-01421-WHO, 2025 WL 2391394 (N.D. Cal. Aug. 18, 2025) ..... 7

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ..... 9

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ..... 11, 14

*Tejon v. Zeus Networks, LLC*,
No. 24-11114, 2026 WL 1194722 (11th Cir. May 1, 2026) ..... 9

**Statutes**

Cal. Civ. Code § 1799.208 ..... 1, 13, 14, 15

Cal. Lab. Code § 925(a)(1) ..... 15

## I. INTRODUCTION

Plaintiff's opposition ("Opposition") to Topps' motion to compel arbitration ("Motion") confirms that there is a binding arbitration agreement between Plaintiff and Topps that requires arbitration of his claims. Plaintiff does not contest any of Topps' evidence. He does not dispute that he has a Topps account he created nearly four years ago, that he repeatedly logged into his account, and that he did not opt out of the Arbitration Agreement.[1] Nor does Plaintiff dispute Topps' evidence of the Topps login webpages. Plaintiff does not even contend that he has never seen the Topps Terms or was unaware of the hyperlink to them on the login webpages. Against the weight of this undisputed evidence, Plaintiff attempts to evade arbitration by challenging whether Topps' login webpages are sufficient to form a binding arbitration agreement between him and Topps.

None of Plaintiff's challenges overcomes Topps' well-supported Motion.[2] *First*, Plaintiff's contention that the reference to the Topps Terms on the login webpages is not conspicuous as a matter of law is not credible, nor supported. Plaintiff presents the Court with misleading and cropped images of the webpages at issue in *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022), and *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025). The actual webpages at issue in those cases bear no resemblance to the Topps login webpages. *Second*, Plaintiff's argument that Topps' login webpages are not sufficient to obtain assent to the Terms because of a purported "button-text mismatch" fares no better. Plaintiff seeks to craft a rule that does not exist in the case law. Topps' login webpages contain the explicit advisal necessary to obtain assent. *Finally*, Plaintiff's challenge to the New York choice-of-law provisions in the Arbitration Agreement and the Topps Terms based on California Civil Code § 1799.208 is unavailing. The unchallenged Delegation Clause in the Agreement reserves this issue for the Arbitrator, and Plaintiff's challenge otherwise fails on the merits. Thus, the Court should grant Topps' Motion, order arbitration, and stay the case pending resolution of the arbitration.

---

[1] Unless otherwise noted, all defined terms from Topps' Motion are incorporated here. All numbered exhibits in the brief are to the Declaration of Aaron Craig filed concurrently with the Motion. All lettered exhibits in this brief are to the Declaration of Robby L.R. Saldaña concurrently filed with this reply brief.

[2] Plaintiff's suggestion that Topps has not "dispute[d] the merits" of his claims is misleading. Opp. 1. The parties agreed to resolve Topps' motion to compel arbitration first. Dkt. 16.

## II. ARGUMENT

### A. Plaintiff Fails to Refute That the Arbitration Agreement Is Binding.

Plaintiff attempts to evade arbitration by challenging whether there is an agreement to arbitrate between the parties.[3] He contends there is no such agreement because Topps' login webpages purportedly do not meet the California law test for online contract formation via inquiry notice. Opp. 6-15. But the webpages meet this test. Mot. 14-20. Without waiver of Topps' argument that New York law governs here[4], Lanzarin fails to show that the webpages are insufficient.

#### 1. Plaintiff Does Not Refute Topps' Showing That Topps' Login Webpages Provide Reasonably Conspicuous Notice of the Topps Terms.

Lanzarin fails to rebut Topps' showing that at the first step of the inquiry-notice test, *i.e.*, Topps' login webpages provide "reasonably conspicuous notice of the terms." *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025) (citation omitted). This requires an analysis of the visual design of the webpage ***and*** the transactional context. *Id*. Plaintiff's challenges to the visual design of the webpages are fatally flawed, and he ignores the transactional context entirely. Opp. 7-13.

##### a. Plaintiff's Misleading Arguments Cannot Refute the Visually Conspicuous Notice of the Topps Terms on the Login Webpages.

Topps' login webpages provide conspicuous notice of the Topps Terms to a reasonably prudent user. Mot. 15-19. Plaintiff asks this Court to conclude otherwise by (1) submitting a highly misleading visual "comparison" of the webpages to webpages the Ninth Circuit addressed in *Chabolla* and *Berman*, and (2) myopically attacking the underlining of the Terms. Each attack fails.

***Topps' Login Webpages Provide Adequate Notice.*** The visual design of Topps' login webpages plainly provides conspicuous notice of the Topps Terms to a reasonably prudent user. The login webpages that Plaintiff challenges are as follows:

---

[3] Plaintiff's reliance on *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), is misguided. That case rejected a special arbitration waiver rule, which has no relevance here. *Id*. at 414.

[4] Topps has explained why New York law should govern the contract formation analysis here and why there is a binding arbitration agreement between Topps and Plaintiff under New York law. Mot. 8-14. Lanzarin does not address Topps' New York-law contract formation argument and thus concedes it. While Lanzarin disputes the applicability of New York law, he concedes that "internet contract principles are substantially the same irrespective of the forum." Opp. 4.







Ex. 1 at 3 (left screen, desktop); Ex. 2 at 3 (right screen, mobile).[5] Under the "totality of the circumstances," *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514 (9th Cir. 2023), multiple elements of these webpages confirm that they satisfy inquiry-notice: (1) the webpages lack clutter, (2) they use a customary design element denoting the existence of a hyperlink, *i.e.*, underlining, and every hyperlinked element is underlined, including the Topps Terms, (3) the notice of the Topps Terms is placed immediately below the only action button on each webpage, (4) the notice is in the same font size as nearly all other text on the webpages, and (5) the text on the webpages is in a black color that contrasts with the white background. Mot. 15-19 (collecting cases). Moreover, as discussed in greater detail below, these webpages have no colorful graphics or imagery, let alone other design elements, that could distract a user from the notice.

***Plaintiff's Misleading Visual "Comparison."*** Plaintiff first attacks the notice of the Topps Terms in the Topps login webpages by purporting to provide "[a] side-by-side comparison to [sic] with the sign-in wraps the Ninth Circuit has rejected" in *Berman* and *Chabolla*, Opp. 8-10, which Plaintiff claims "are arguably more conspicuous than the notices at issue here, yet the Ninth Circuit still found them to be deficient." Opp. 10. These arguments are not credible. He has cropped every webpage screen he contends was "at issue" in *Berman* and *Chabolla* and omitted a key screen at

[5] Plaintiff includes the first screen in the two-screen login sequence in his Opposition but makes no specific arguments about the first screen. Opp. 8-9.

issue in *Chabolla*. And his purported comparison relies on fatal misstatements of these cases.

Plaintiff incorrectly asserts that the below "two screens were at issue" in *Chabolla*:







Opp. 9 (purporting to cite opening brief in *Chabolla v. ClassPass Inc.*, Case No. 23-15999, Dkt. 11 at 20-22). Subject to resizing for this brief, the screens depicted in *Chabolla* are actually as follows:







*Chabolla*, 129 F.4th at 1175 (appendix); *see also* Ex. A at 2 (screen on the left), *id.* at 3 (screen on the right).[6] Plaintiff has ***omitted*** the entire lefthand side of each webpage in a misleading attempt to argue that Topps' login webpages provide less conspicuous notice. They do not. Along with submitting misleading images of the two webpages above, Plaintiff's assertion that *Chabolla* found that they failed to provide conspicuous notice is also inaccurate. While the Ninth Circuit made observations about the notice on the screens, it expressly "decline[d] to consider any further whether the notices on screens 2 and 3 are conspicuous enough" because "even if screens 2 and 3 provided notice of the Terms of Use, Chabolla had no means of manifesting her assent to those

---

[6] A slightly cropped version of the screen on the left appears in the appellant's opening brief in *Chabolla. See Chabolla*, Case No. 23-15999, Dkt. 11 at 22. A slightly cropped version of the screen on the right appears in the opening brief in *Chabolla. See id.* at 23.

terms on those screens." *Chabolla*, 129 F.4th at 1157-58.

Tellingly, Plaintiff omits from his brief the ***only*** screen in *Chabolla* that the Ninth Circuit concluded failed to provide conspicuous notice of the terms, specifically, screen 1. *Contrast* Opp. 9-10, *with Chabolla*, 129 F.4th at 1174-75; *see also* Ex. A at 1. Screen 1 appears as follows:




*Chabolla*, 129 F.4th at 1173; *see also* Ex. A at 1.[7] Addressing this screen, the Ninth Circuit held as follows: "Because of the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color, we find that 'it is 'deemphasized by the overall design of the webpage' and not 'prominently displayed' ***on screen 1***." *Chabolla*, 129 F.4th at 1157 (emphasis added). Plaintiff relies on this holding to challenge Topps' login webpages but omits the italicized text from his brief. Opp. 10. That omission cannot hide that Topps' login webpages—one designed for a desktop browser and one designed for a mobile browser—bear ***no*** resemblance to screen 1 in *Chabolla*.

Unlike screen 1 in *Chabolla*, Topps' login webpages have no colorful images and only one action button. *Contrast* Ex. 1 at 3, Ex. 2 at 3, *with Chabolla*, 129 F.4th at 1173. The notice of the Terms is immediately below the action button where a user logging into their Topps account would look. Contrary to Plaintiff's assertion that the notice "falls outside of the user flow," Opp. 11, it is not "on the periphery of where a user … would be looking." *Chabolla*, 129 F.4th at 1157. Nor is the visual flow between the action button and the notice interrupted by a second action button. *Id.*

---

[7] Although screen 1 shares some of the same design features as screen 2 in *Chabolla*, it is a different screen. Unlike screen 2 (which asks for "First Name" and "Last Name," and has a white "Continue" button), screen 1 has a box to enter an email address, a white "Continue" button, and a blue button with the phrase "Sign-up with Facebook."

at 1157 (observing that "the notice seems to fade into the irrelevancy of other aspects of the page").

Plaintiff also asserts that "[i]n *Berman*, the screens at issue were the following" Opp. 10 (purporting to cite *Berman*, 30 F.4th at 849):







This assertion, too, is incorrect. The screens at issue in *Berman* were actually as follows:










*Berman*, 30 F.4th at 860-61; *see also* Ex. B at 1 (screen on the left), *id.* at 2 (screen on the right). Plaintiff has again omitted substantial portions of the webpages that the Ninth Circuit considered. In doing so, he substantially distorts, if not guts, the Ninth Circuit's understandable observation in *Berman* that "[t]he text disclosing the existence of the terms and conditions on these websites is the antithesis of conspicuous." 30 F.4th at 856. The same cannot be said of Topps' login webpages.

Nor can Plaintiff credibly contend that Topps' login webpages bear any resemblance to the ones actually at issue in *Berman*. The text on Topps' webpages is ***not*** "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye." *Id.* at 856-57. The webpages do not use "comparatively larger font … in ***all*** of the surrounding text." *Id.* at 857 (emphasis added). With the exception of a logo graphic and the phrase "Enter your password," Topps' login webpages (including the "Log In" action button) use the same font size. *See* Ex. 1 at 3, Ex. 2 at 3. Unlike the screens at issue in *Berman*, there is ***no*** "barely readable" notice text that could be "deemphasized by the overall design of the webpage." *Berman*, 30 F.4th at 857. Nor do Topps' login webpages have "other visual elements" that "draw the user's attention" away from the notice text. *Id*. The distracting visual elements in *Berman* were large green buttons, brightly colored graphics, and text in other bright colors. *See id.* at 853-54 (describing webpages). No such graphics or colors appear on Topps' login webpages. Plaintiff's suggestion that the light gray "Log In" button on the webpages—which turns black only after text is entered into the password box—somehow distracts from the notice strains credulity. Opp. 12 (arguing that the "button is designed to be high contrast (light text on a black background)"). That button ***draws attention*** to the notice language, not away from it, which also undermines Plaintiffs' complaints about the bolded phrases "Reset password" and "Not you?" links and the size of the logo graphic and the "Enter your password" text. *Id*.

The stark difference between this case and *Berman* renders inapposite other cases Plaintiff cites that relied on *Berman* to reject certain webpages. *See Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 959 (2025) (relying on *Berman* and concluding that "appellants designed their checkout pages in a manner that 'draw[s] the user's attention away' from the gray, difficult to read, notice text" given "the degree of clutter on the two-column checkout pages and the conspicuousness of the pages' other elements in relation to the notice text"); *Rushing v. Williams-Sonoma, Inc.*, 2025 WL 2391394, at *7 (N.D. Cal. Aug. 18, 2025) (relying on *Berman* and taking issue with the "much smaller" font of the notice language, two highly contrasted action buttons, lack of capitalization, and lack of contrasting color hyperlinks, and opining that "the design of the disclosure is insufficient"); *Lopez v. Dave Inc.*, 2022 WL 17089824, at *1 (N.D. Cal. Nov. 21, 2022) (opining

that "as in *Berman*, the text disclosing the existence of the agreement is 'is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements''" and "[t]hat problem is exacerbated because the 'comparatively larger font' of the 'Join' button and the cartoon bear 'draw the user's attention away from the barely readable critical text'").

In short, Plaintiff's purported visual "comparison" cannot and does not undermine the conclusion that Topps' login webpages provide reasonably conspicuous notice of the Topps Terms.

***Plaintiff's Hyperlink Attack.*** Unable to analogize Topps' login webpages to the deficient notice screens at issue in *Chabolla* and *Berman* or similar cases, Plaintiff attacks the underlining of the Topps Terms as uniquely insufficient to provide reasonably conspicuous notice. Opp. 10-11. Plaintiff contends that "Defendant's login screen does nothing more than underline the terms." *Id.* 11. Not only is that contention factually incorrect given the overall design of the webpages, but Plaintiff also manufactures a per se rule that does not exist nor which the Court should adopt here.

Plaintiff has no persuasive argument that the underlined hyperlinked Terms are not sufficiently conspicuous. As the Ninth Circuit has explained, Terms of Use may be disclosed through a hyperlink as long as the hyperlink's presence is "readily apparent" and "alert[s] a reasonably prudent user that a clickable link exists." *Berman*, 30 F.4th at 857. Here, the underlined hyperlinked Terms are readily visible. They are in a font color that contrasts with the white background, in a font size comparable with most of the text on the webpages, and the webpages are uncluttered. Ex. 1 at 3; Ex. 2 at 3. And every underlined word or phrase on the webpages ***is*** a hyperlink. It defies common sense that a reasonably prudent user would not know the Terms are a clickable link. *See Godun*, 135 F.4th at 710 ("A hefty dose of common sense goes a long way.").

Plaintiff cannot show otherwise by asserting that Topps' login webpages are "substantially similar" to an account creation webpage found insufficient in *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285 (E.D. Cal. 2024). Opp. 10. They are not. The account creation webpage at issue there had a large red "Create An Account" button, which the plaintiff argued was "the focal point on the screen." *Cavanaugh*, 738 F. Supp. 3d at 1295. There is no red button on the webpages here, and the overall design of the webpages does not render the underlined Topps Terms inconspicuous. *See* Ex. 1 at 3; Ex. 2 at 3. These differences alone render *Cavanaugh* inapposite.

Plaintiff's challenge to the conspicuousness of the Topps Terms by relying on the *Cavanaugh* court's discussion of the hyperlink in the account creation webpage fares no better. There, the court opined that the hyperlink was not sufficiently conspicuous because it was underlined but not in a contrasting color. *Cavanaugh*, 738 F. Supp. 3d at 1296. The court stated it was unwilling to "depart" from what it viewed as "the overall trend that finds hyperlinks must be offset in a more obvious way than the underlining used on the Fanatics sign-up page at issue in this case." *Id*. That discussion does not control nor is it persuasive given the different webpage design at issue there. Moreover, the court's assertion improperly adopted the very sort of per se rule that the Ninth Circuit has not adopted and which Judge Nelson cautioned against. *See Godun*, 135 F.4th at 710 (stating that the Ninth Circuit has "not created a checklist for website designers," nor "generated per se design rules that must be followed for a contract to be formed between a website user and provider"); *id.* at 714-15 (Nelson, J., concurring). While certain district court decisions, including the *Cavanaugh* court, have relied on *Berman* to effectively adopt a per se rule that underlining hyperlinked Terms of Use is not alone sufficient to provide reasonably conspicuous notice, *Berman* did not so hold. *See Berman*, 30 F.4th at 857 (opining that underlining "will often be insufficient to alert a reasonably prudent user that a clickable link exists"). And, as Topps explained, *Berman* cannot be divorced from the webpages at issue there, in which the underlined Terms were in "a font so small that it is barely legible to the naked eye." *Id*. at 856-57; Mot. 17-18. Plaintiff has no response to this point.

The other cases on which Plaintiff relies are also distinguishable. As Topps previously explained (Mot. 18), *Sellers v. JustAnswer LLC* does not control because the underlined hyperlinked notice at issue "appear[ed] in extremely small print," 73 Cal. App. 5th 444, 480-81 (2021), and was "so small that the contrast is not sufficient to make the text apparent," *id*. at 481. Plaintiff does not respond to these points. Plaintiff's remaining cases similarly involved underlined hyperlinked text that was in much smaller font and/or was eclipsed by colorful visuals and/or clutter on the webpage. *See Tejon v. Zeus Networks, LLC*, 2026 WL 1194722, at *3 (11th Cir. May 1, 2026) (the "terms of service hyperlink is printed in a small font on the bottom half of the page" which was "easy to overlook given the larger font sizes and bolder colors of other elements on the

page," including "two large, red action buttons that were prominently featured at the center of the page," and the notice text "appears in a dim, gray color"); *Dilanyan v. Hugo Boss Fashions, Inc.*, 2025 WL 3549869, at *3 (C.D. Cal. Dec. 3, 2025) ("as in *Berman*, Defendant's reference to the Terms and Conditions was difficult to see" because it "was located at the end of a long paragraph displayed in small font; in contrast, the banner advertised Defendant's sales and invited Plaintiff to 'Access Sale' in much larger font" and "Plaintiff viewed the banner on his mobile phone, rendering the already small hyperlink to the Terms and Conditions even more difficult to notice"); *Ferrell v. SnapCommerce Holdings, Inc.*, 2025 WL 3280992, at *3 (N.D. Cal. Nov. 25, 2025) (notice text was "in very small, gray front on a white background at the bottom of a page" that was in a font "smaller than any other font on the page"); *R.C. v. Walmart Inc.*, 2025 WL 2836648, at *3 (C.D. Cal. Sept. 30, 2025) (notice text was "written in small, light gray font against a white background" that was "nearly identical to that in *Berman*" and "the website's 'Check Out' or 'Buy Now' pages are cluttered with colorful graphics, links, and additional information along the left-hand side and around the Order Summary"); *Carruth v. KD Creatives, Inc.*, 2025 WL 2623291, at *5 (E.D. Cal. Sept. 11, 2025) (notice text was in "smaller and all black font" below "a black rectangular box" which "displays the word 'Checkout' in white font", all of which was on a "grey background" that "further detracts from its conspicuousness"). Thus, Plaintiff's attack on the underlining of the hyperlinked Topps Terms on Topps' login webpages does not undermine Topps' showing.[8]

**b. Plaintiff Wholly Ignores the Transactional Context.**

Despite arguing that Topps' login webpages do not suffice for online contract formation via inquiry notice, Plaintiff wholly ignores the transactional context. Opp. 7-15. He thus fails to abide by the Ninth Circuit's instruction that context "should be considered together" with a webpage's visual design. *Godun*, 135 F.4th at 709 (citation omitted). By contrast, Topps explained why the transactional context of a user with an account who repeatedly logs into his account weighs in favor

[8] Plaintiff's argument that "[t]he checkout flow being separate also cuts against Defendant's position," Opp. 12, is a red herring. The notice at issue here concerns Topps' login webpages, not the checkout flow. Moreover, *Judge v. Academia, Inc.*, 2026 WL 1256876 (N.D. Cal. May 7, 2026), is inapposite. There, the court denied the motion to compel arbitration because the distinguishable webpage failed to provide reasonably conspicuous notice of the Terms ***and*** had advisal language that was too limited and ambiguous to obtain assent. *Id.* at *3-4. That does not apply here.

of concluding that the notice of the Terms in the login flow was conspicuous. Mot. 18-19 (collecting cases). Plaintiff's failure to address this issue is a tacit concession that this context "implies a contractual relationship" where the Court "should expect that a reasonable internet user is more vigilant in looking for contractual terms" that govern that relationship. *Godun*, 135 F.4th at 709. Indeed, by failing to address these arguments, Plaintiff concedes them. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue" (simplified)).

### 2. Plaintiff Fails to Overcome Topps' Showing That He Unambiguously Manifested Assent to the Topps Terms.

Plaintiff also fails to rebut Topps' showing at the second step of the inquiry-notice test, which asks "whether any action taken by the internet user—such as clicking a button or checking a box—'unambiguously manifest[ed] his or her assent' to proposed contractual terms." *Godun*, 135 F.4th at 710 (citation omitted). Topps' login webpages expressly advised him that "By continuing, you agree to the Topps Terms and Privacy Policy." Ex. 1 at 3. Plaintiff does not dispute that he clicked the "Log In" button each time he logged into his account, or that he was required to accept the Terms to log into the account. These undisputed facts show that he unambiguously manifested assent to the Topps Terms. Mot. 19-20.

Plaintiff attempts to evade this conclusion by arguing that Topps "cannot prove" he assented to the Topps Terms because there is a purportedly "fatal" "button-text mismatch" between the "Log In" button on the login webpages and the advisal text on them. Opp. 14. Attempting to analogize this case to *Chabolla*, Plaintiff argues that the purported mismatch is that "the notice language in the present action reads '[b]y continuing, you agree to the Topps Terms and Privacy Policy' but there is no continue button, instead there is only a button that reads 'Log In.'" *Id.* Plaintiff misreads and misapplies *Chabolla* to Topps' login webpages.

Nothing in *Chabolla* requires the button-text match rule that Plaintiff attempts to manufacture. Plaintiff argues that "the Ninth Circuit found 'the notice language . . . ambiguous' where the advisal read that '[b]y signing up you agree to our Terms of Use and Privacy Policy'

because 'there is no 'sign up' button, and the only button . . . reads 'Continue.'" *Id.* (quoting *Chabolla*, 129 F.4th at 1158). But the issue in *Chabolla* was not merely the absence of a "sign up" button and the "Continue" button, as Plaintiff erroneously suggests. Addressing screen 2, the Ninth Circuit found there was "too much ambiguity in screen 2's language to find that a user binds herself to the Terms of Use by continuing past it." *Chabolla*, 129 F.4th at 1158. This was because the screen lacked an "explicit instruction" explaining what actions would constitute signing up. Specifically, "[a]t no point on any screen is a user advised that a particular action has 'signed her up' or will 'sign her up,' other than screen 1's option to 'Sign up with Facebook.' Rather than provide explicit instruction, screen 2 asks the user 'What's your name?' and includes fields for a first name and last name." *Id*. The "Continue" button could not resolve this ambiguity.

Plaintiff does not identify any missing explicit instruction or ambiguity in the Topp advisal, nor can he do so. The advisal explicitly instructs a user of the action that constitutes assent to the Terms, *i.e.*, "by continuing." That advisal is precisely the type of explicit instruction that the Ninth Circuit has endorsed. *See Godun*, 135 F.4th at 711 ("*By clicking* the Continue >> button, you agree to the Terms & Conditions,' or '*By tapping* 'Play' I agree to the Terms of Service.'"); *Oberstein*, 60 F.4th at 515-16 (considering text that informed the user that, by clicking this button, "you agree to our Terms of Use" or "[b]y continuing past this page, you agree to the Terms of Use"). Nor is there any ambiguity. By definition, logging in is continuing into the user's account. A reasonable user would not think that "by continuing" means something other than clicking the "Log In" button. See *Crowell v. Audible Inc.*, 806 F. Supp. 3d 1216, 1226 (W.D. Wash. 2025) ("The 'Continue' button—just below text directing the user to '[s]ign in with your Amazon account'—can mean only one thing: that by clicking 'Continue' the user is signing in to their Amazon account and thus assenting to the Audible COUs.").

Nor does *Godun* support Plaintiff's button-text match rule. The Ninth Circuit did not find lack of assent based on a purported mismatch. The Court found that an advisal of the terms that "simply said 'I agree' without explaining more" was "not enough to constitute 'an unambiguous manifestation of assent' to those terms." *Godun*, 135 F.4th at 713. The advisal here does not suffer from that defect. Plaintiff also cherry-picks language from *Godun* that "[u]nder *Chabolla*, the text

on an action button matters insofar as it matches an advisal's explanation." *Id.* (citing *Chabolla*, 129 F.4th at 1158-59); Opp. 14. But Plaintiff misses the point. Rather than adopt a button-text match rule, the Ninth Circuit explained that "nothing about the text on an action button by itself can overcome the rule, in the inquiry-notice or 'sign-in wrap' context, mandating explicit advisement in advisal language so that there is unambiguous manifestation of assent." *Godun*, 135 F.4th at 713. *Goden* otherwise belies Plaintiff's suggestion that the text of "Log In" button had to match the advisal verbatim *See id.* at 712 ("The advisal lacked an explanatory phrase indicating that 'By clicking connect now' or 'By connecting,' or 'By chatting,' etc., she agreed to the terms.").

Plaintiff's remaining argument that "repeated logins do not cure formation defects," Opp. 15, quickly collapses. He unambiguously manifested his assent to the Topps Terms each time he logged into his Topps account, as discussed above and in Topps' Motion. The cases on which he relies do not show otherwise. One case did not involve online contract formation. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014) (arbitration provision was in physical agreement mailed to plaintiff over one month after he activated service). One case involved a defendant whose website screens failed to provide conspicuous notice or failed to obtain unambiguous assent. *See Chabolla*, 129 F.4th at 1160. And Plaintiff inaccurately describes the last case as "declining to consider the Plaintiff 'also assented each subsequent time he logged into the website' when analyzing the conspicuousness of notice." Opp. 15 (quoting *Cavanaugh*, 738 F. Supp. 3d at 1295). The court never "declined" to consider this issue; it merely described in passing the defendant's argument that the plaintiff "also assented each subsequent time he logged into the website." *Cavanaugh*, 738 F. Supp. 3d at 1295. In short, Plaintiff fails to refute Topps' showing that he unambiguously manifested assent to the Topps Terms and is therefore bound by them.

**B. Plaintiff's Voidness Challenge to the New York Choice-of-Law Provisions Is Not Properly Raised Here and Otherwise Lacks Merit.**

Plaintiff's voidness challenge to the New York choice-of-law provisions in the Arbitration Agreement and the Topps Terms pursuant to California Civil Code § 1799.208 is unavailing. Opp. 5-6. The unchallenged Delegation Clause reserves issues like this one for the Arbitrator, making the challenge improper. Plaintiff's argument otherwise fails on the merits.

**1. The Delegation Clause (Which Plaintiff Does Not Challenge) Reserves This Issue for the Arbitrator.**

Plaintiff's voidness challenge to the New York choice-of-law provision in the Arbitration Agreement and the Terms is not properly raised in this Court. "[B]efore the Court can determine whether a specific clause within the Agreement is void, the threshold issue is '*who decides* [the issue], a court or the arbitrator?'" *Armenta v. Go-Staff, Inc.*, 2017 WL 1711293, at *3 (S.D. Cal. May 3, 2017) (citation omitted). The answer of "who decides is in the first instance a matter of agreement, with the parties' agreement subject to interpretation under state contract law." *Id.* (citing *Sandquist v. Lebo Auto., Inc.*, 205 Cal. Rptr. 3d 359, 363 (2016)). As explained in Topps' Motion, the Delegation Clause provides, in relevant part, that "any Dispute concerning or relating to this Arbitration Agreement [] including the scope, validity, enforceability, or severability of this Arbitration Agreement or its provisions" is reserved for the Arbitrator. Ex. 3 at 23, § 18.2. Plaintiff's challenge to the New York choice-of-law provision in the Arbitration Agreement falls squarely within the Clause as he is disputing the validity or enforceability of a provision. Plaintiff does not specifically challenge the Delegation Clause here. That is fatal. It is well-settled that a party "must specifically reference the delegation provision and make arguments challenging it." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023). Plaintiff waives any challenge to the Delegation Clause by failing to specifically challenge it. *See Stichting*, 802 F. Supp. 2d at 1132.

**2. Plaintiff Provides No Evidence that He Ever Requested to Void the Provisions, Nor Are They Voidable.**

Even if the Court entertained Plaintiff's § 1799.208 challenge further, it fails on the merits because he provides ***no*** evidence that he ever requested to void the New York choice-of-law provisions, nor can he show that they are voidable.

*First*, Plaintiff has failed to provide any evidence that he has elected to void the New York choice-of-law provisions. By its plain terms, the statute requires a request by the consumer to render a purportedly problematic choice-of-law provision void. *See* Cal. Civ. Code § 1799.208(b) (stating that, with respect to a provision that violates subdivision (a), "if a provision is rendered void at the request of the consumer, the matter shall be adjudicated in California and California law shall

govern the dispute"). The Court should reject Plaintiff's attempt to evade the choice-of-law provisions in the Topps Terms because he provides no evidence that he ever made such a request. In any event, even if the Court applied California law, there is still a binding arbitration agreement between Plaintiff and Topps. Mot. 14-20 (California law).

*Second*, the New York choice-of-law provisions are not voidable because they do not violate § 1799.208. The statute provides that "[a] seller shall not require a consumer to agree to a provision that would do either of the following: (1) [r]equire the consumer to arbitrate outside of California a claim arising in California," or "(2) [r]equire the consumer to arbitrate a controversy arising in California under the substantive law of a state other than California." Cal. Civ. Code § 1799.208(a). Addressing a nearly identical California law applicable to contracts with employees who primarily reside and work in California, courts have concluded that the ability to opt out of arbitration renders the law inapplicable. Cal. Lab. Code § 925(a)(1); *see Naler v. Schneider Nat'l Carriers, Inc.*, 2021 WL 8269177, at *3 (C.D. Cal. Nov. 5, 2021) ("Section 925(a)(1) is inapplicable to the SMAP's Nevada choice of law provision because Plaintiff was permitted to opt out of that provision, such that it was not a condition of his employment."); *Romero v. Watkins & Shepard Trucking, Inc.*, 2020 WL 5775180, at *3 (C.D. Cal. July 10, 2020) (similar). The same reasoning applies here. Because Plaintiff had the ability to opt out of arbitration, *see* Ex. 3 at 27, § 18.11, the choice-of-law provisions do not violate § 1799.208(a).

## III. CONCLUSION

For the foregoing reasons and those raised in Topps' Motion, Topps requests that the Court compel arbitration of Lanzarin's claims and stay the case pending resolution of arbitration.

Dated: May 28, 2026

COOLEY LLP

*/s/ Matthew D. Brown*

Matthew D. Brown
Attorneys for Defendant
THE TOPPS COMPANY, INC.